PHINIZY *et al. v.* EVE, and *vice versa.*

1. The forty-first section of the act of September 22, 1881, establishing a city court in the county of Richmond, which provides that the judge thereof shall be ex officio commissioner of roads and revenues of that county, is not open to attack on the ground that it seeks to confer upon a judicial officer legislative functions and is therefore violative of that paragraph of the constitution which declares that : " The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others, except as herein provided."

2. Nor is that section contrary to either of the constitutional provisions below quoted, viz.: " Whatever tribunal, or officers, may hereafter be created by the General Assembly for the transaction of county matters, shall be uniform throughout the State, and of the same name, jurisdiction, and remedies, except that the General Assembly may provide for the appointment of commissioners of roads and revenues in any county." " Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law."

Argued June 1, — Decided July 24, 1899.

Quo warranto. Before Judge Brinson. Richmond county. January 30, 1899.

This was a proceeding instituted for the purpose of preventing the judge of the city court of Richmond county from discharging the duties of commissioner of roads and revenues. The petitioners alleged that, as such commissioner, he was levying the taxes of the county, and that this was an exercise of legislative power, and therefore violative of paragraph 23 of article 1 of the constitution of the State (Civil Code, § 5720); and that the act of the legislature which provides that the judge of said court shall be ex officio commissioner of roads and revenues is repugnant to this provision of the constitution, and also to the

provisions contained in article 11, section 3, paragraph 1, and in article 1, section 4, paragraph 1 (Civil Code, §§ 5930, 5732). The petition was refused.

*E. B. Baxter* and *Bryan Cumming*, for plaintiffs.

*Frank H. Miller, Joseph R. Lamar, Boykin Wright*, and *C. Henry Cohen*, for defendant.

LUMPKIN, P. J.    1. The judge of the city court of Richmond county is, of course, a judicial officer.    The forty-first section of the act of September 22, 1881 (Acts 1880–81, p. 582), reads as follows: "The judge of said city court shall be ex officio commissioner of roads and revenues for the County of Richmond, and as such shall discharge all the duties formerly devolved upon the justices of the inferior court as to county business."    It may, for the purposes of this discussion, be assumed that the General Assembly intended to impose upon this official in his judicial capacity the duties indicated. Still, we do not think this section of the act in question undertakes to confer upon the judge of the city court any legislative power, an attempt to do which would, without doubt, be repugnant to the paragraph of the constitution copied in the first headnote, and which is now embraced in section 5720 of the Civil Code.    The position taken by counsel for the plaintiffs in error, who sought by quo warranto proceedings to prevent Judge Eve from discharging the duties of county commissioner, is, that he exercises a taxing power, which is purely a legislative function and therefore one which can not be constitutionally conferred upon a judicial officer.    Granting that the power to tax is exclusively of a legislative character, we have, without serious difficulty, reached the conclusion that Judge Eve is not exercising such a power.    If the rate of county taxation were the same in every county of the State and were fixed by an act of the General Assembly, it would be readily admitted that in levying the tax the judge would be performing a purely ministerial duty.    It is argued, however, that he fixes the rate, and in so doing necessarily does something which is legislative in its nature.    In determining what the rate shall be in a given year, the judge has before him the

tax digest showing the gross amount of taxable property in Richmond county. This is furnished to him by the receiver of tax, returns. He also has before him figures representing the several sums which it will be necessary to raise for the purpose of paying all the different charges for which the county will be liable during that year. The amount of these sums would, of course, be the total amount to be raised for county purposes; and with this amount and that representing the taxable property of the county as bases for the work, it would be simply a matter of calculation, involving neither the exercise of discretion nor of legislative power, to figure out the rate. It makes no difference in principle that the judge may take separately the sum requisite for each particular object of county taxation and calculate the per centum on the State tax which will be necessary to raise that sum, and then by addition ascertain what will be the gross rate of taxation for the county. The result to the taxpayer is the same whether the gross rate is first arrived at and then apportioned among the several objects, or the specific rate for each object is first fixed and the gross rate then ascertained in the manner stated. Pursuing either plan, the work is one of calculation only. The place where the judge's discretion comes into exercise is in performing the duty of arriving at the several sums upon which, whether taken separately or in the aggregate, he is, in connection with the information derived from the tax digest, to base the calculation, or calculations, for fixing the tax rate. He must determine in advance how much will be needed to build and repair the public buildings and bridges; how much for roads; how much for the expenses of courts; how much to support paupers; and so on through the entire list of objects for which county taxation may be lawfully imposed. In doing this part of the work, he certainly has large powers and is necessarily given a broad discretion ; but this work, whether "administrative," or "ministerial," or "quasi-judicial," is not legislative. If the judge, as county commissioner, exercises a legislative function, he must make a law. The General Assembly makes laws in the shape of statutes or joint resolutions. Judge Eve neither enacts a statute nor agrees to a resolution.

He can not make a law nor can he change one. He must levy the taxes according to laws duly passed by the lawmaking power, and not agreeably to laws of his own creation. Every step is prescribed. The General Assembly has declared what are the subjects of taxation; when, how, and by whom, and to whom, returns are to be made; when and by whom the rate must be calculated; and when and by whom and to whom the money must be paid. It has further enacted how the laws on the subject of taxation shall be enforced, and fixed the tax liens. So the General Assembly, by which alone the taxing power can be exercised, has left nothing to be legislated upon by anybody else. There is legislation ample to cover the entire field. But this legislation has come from the lawmaking power, and not from the commissioner of roads and revenues.

2. The General Assembly did not, in enacting the forty-first section of the act under consideration, violate that paragraph of the constitution, now embodied in section 5930 of the Civil Code, which provides for uniformity in the tribunals or officers to be created "for the transaction of county matters." That paragraph expressly authorizes "the appointment of commissioners of roads and revenues in any county." Manifestly, the number of these commissioners need not be the same in each county. In one county there may be three, in another five, and so on. As the exception to the general rule laid down in this paragraph destroys the scheme of uniformity so far as relates to county commissioners, we can see no reason why a given county may not have one commissioner just as well as another may have three or five. The foregoing also disposes of the point that the section of the act of 1881 with which we are dealing is contrary to that paragraph of the constitution which declares that: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." Civil Code, § 5732. Construing this paragraph in pari materia with the one last above referred to, it is clear that the framers of the constitution intended that the General Assembly might enact a special law for any county the purpose of which was to establish therein

a commissioner, or commissioners, of roads and revenues.   In addition. to this, it may be added that there is not now of force in this State an existing general law providing for the appointment of commissioners to take charge of and manage the financial affairs of the several counties.

Our conclusion therefore is, that the trial court did not err in holding that no sufficient reasons for preventing Judge Eve from discharging the duties as to county matters imposed upon him by the act creating the city court of Richmond county were alleged.

*Judgment on main bill of exceptions affirmed.   Cross-bill of exceptions dismissed.   All the Justices concurring.*